I represent Blaine Salmons, who is the appellate in this case. In 2016, Mr. Salmons was convicted of being in felony possession of a firearm. We went to sentencing. The PSR enhanced his base offense level because he had a prior conviction for aggravated robbery in 1997 under West Virginia law. I objected to that. We had a difference in guidelines of 30-37, 15-21 months. And again, we've covered the rest in the briefs. The issue before the court is not complicated. It's whether West Virginia aggravated robbery from 1997, it's been amended since, was a crime of violence under 4B1.2a of the force clause. I believe the offense by our courts has been recognized as derived from common law. The critical elements to it were discussed on page 11 of our brief, but basically the requirement involving the force clause is that there has to be unlawful taking of money or goods from the person of another or in his presence by force or putting him in fear with the intent to steal the money or goods. There is no definition. How do you get around Chief Judge Gregory's opinion in the doctor case, which indicated, in the doctor case, the opinion indicates that strong-arm robbery statute in South Carolina is a crime of violence. Well, a taking by intimidation or threatened use of physical force. So, why isn't this simply covered as a matter of circuit precedent? Because it's distinguished, in our case, the same reason it was in the Yates case before the Sixth Circuit, in that there was no indication in the doctor case of South Carolina robbery could be committed with minimal actual force. And that force in that case was treated as being something more than that under South Carolina law. That's different than what we've had in Virginia with Winston case, than we've had with North Carolina with Garber. Our law, derived by common law, is from Virginia, at least since 1863. The South Carolina case was a strong-arm robbery. It was a aggravated robbery. This seems to me a species of aggravated robbery. In other words, when you look at the language of the force clause, which is the attempted use or threatened use of physical force against the person of a novel, and you look at the statute of the West Virginia Code, it speaks in terms of the force clause. It talks about striking or beating or other violence to the person. That's what the force clause uses. It talks about physical force against the person of another. And then you continue down the West Virginia statute, and it says, or commits robbery by the threat or presenting of firearms or other deadly weapon. And of course, the force clause covers the threatened use of physical force. And so the West Virginia Code seems to match up with the force clause. And then when you have the doctor opinion, which indicates that taking intimidation or threat involves threatened use of physical force, that's what we have here. Well, what is the force? That's the problem. We've got the structural statute again. The base offense comes from the common law, and then all the West Virginia statutes do is impose different grades of punishment depending on the instrumentality. The force comes from the state statute. It says by partial strangulation. Is that not force? Well, I'm not going to debate partial strangulation or suffocation. Is suffocation not force? Is striking or beating not force? Is other violence to the person not force? Is it violent force under Johnson 2010's definition? That's a distinction, Your Honor, because I can strike a hand off a person in someone's presence. I can push someone, as they found in Gardner, in a fashion that would be characterized possibly as beating. And yet, it would not cause physical pain. It would not cause an injury, but it would still count for aggravation under West Virginia statute. Particularly when, if you look at the Yates case from the Sixth Circuit. Let's look at it. Does that deal with West Virginia law? No, ma'am. It dealt with... So that's what strikes me as very different between this case and Gardner. What we did there was to be looking at North Carolina law, North Carolina case law. And when I look at West Virginia case law, there's a distinguishing feature between aggravated, this is what we have here, and non-aggravated robbery under our current robbery statute. Is that the former requires the utilization of physical force or the use of a deadly weapon against the victim. The latter crime requires only the victim be placed in bodily fear. That doesn't suggest to me that simply tapping somebody would do the trick. Which case are you reading? Harless. Harless. That was after 2001, correct? Is my recollection. Yes, ma'am. I believe Harless. And the significance of... 1981. All right, so that would have been with the 97 statute. The way that has been construed since, again, you go through the structure of the statute. Is it the same statute that's been construed differently? The cases have punched it around differently, Your Honor. Harless says it one way. Collins has looked at it. Wilkerson has looked at it a different way. Do you have a case that's like the case that we relied on Gardner, which was just pushing somebody minimal force? No, ma'am. Not at this time. But what I'm getting to in this... Not categorically a crime of violence. It would be shocking. I mean, I choose my words advisedly. Because the whole statute describes the application of violent force. We'd have to be looking at words like strangulation, suffocation, striking, beating, other violence, and then saying that those weren't forcible means. And that's not going to fly. And it's not when you stop at the first three words. In addition, you've got our circuit's precedent to deal with. And you've got, in addition, the words attempted use or threatened use in the force clause. And that's, I mean, I just think at the end of the road in these cases, there has to be an application of common sense. And there has to be a practical application. And you have to come down with a ruling that, to use a phrase we love, that people of ordinary intelligence would, in this particular line of cases, would look at that case and say, that's right, that makes sense, they got it right. Or they could look at it, if we went your way, and they'd be appalled. I think that's why with the categorical approach, Your Honor, we're looking at the elements and not at the facts or the other things people of common thinking would be appalled with. And I'm trying to get to the runway to give you a place where I can land where at least something I'm saying makes a little bit of sense. The structure of the statute is concerning to me, and what gets into the overbreadth, is when you're getting into a bunch of ors going through means or instrumentality whatsoever. That's very open-ended. That's why I went back to Yates from this year, because Yates was dealing with an Ohio robbery statute that said, resulting from any violence exerted by any means. And that's what carried it over the line. Our statute, these aggravating factors, it doesn't say how forceful striking or beating could be. And that's the point, we're doing penal statutes here. We can certainly construe them as being as forceful as you want to put it. Through instrumentality and context. But above and beyond that, robbery involves a taking by intimidation through the threat and use of physical force. An aggravated robbery must be something even beyond that. And instrumentality whatsoever, when it's in a series involving firearms or deadly weapons or whatever, you have to interpret it in context. And we're not talking about an instrumentality like a feather. We're talking about knives or clubs. That's what the West Virginia legislature meant. Or some kind of steel bar or what have you. It's in a series with firearms or deadly weapons. It's also in a disjunctive series that could have been trying to be as all encompassing as it could be, not just going to, I mean, I don't know how you divine this from the legislature when they did it, but this has to mean really violent, deadly weapons. That's all it can be. But if it's a non-deadly weapon, that doesn't take it out of the reach of the force clause because the force clause is not confined simply to the use of a deadly weapon. The force clause addresses itself to the attempted use, threatened use of physical force. Defined as violent force. Whether it's a deadly weapon or whether it's not a deadly weapon. Right, and I'm not trying to conflate the two. I'm saying there doesn't have to be a threat of violence to a person to be convicted of this. They could threaten to damage a good. They could have an incriminating photograph. No, I don't have a case of that. But it's an instrumentality when it says any instrumentality whatsoever. I understand. You say you don't have a case on this. No, sir, I don't. I appreciate your candor on that. And what I'm saying is the reason you don't have a case on that is because our esteemed colleagues on state court are good and reasonable judges. And they look at these statutes and they know what is intended by the statutes. And they're not talking about some kind of nominal battery. Or they're not talking about some exercise in persuasion to get someone to part with their money. They're talking about an instrumentality. And that is part of a series linking up with firearms and other deadly weapons. Your Honor, before this was amended, people were convicted of having a finger in their pocket. When this was amended in 2001, the presentation language was changed to make there no doubt that we want something worse. Up to that point, you say our courts figure this out. We have no guidance from the legislature on this at all. There's no legislative history on this statute. We've got the few cases who've divined from the equivalent of head notes going back to the 1900s how things came through the common law in the state of West Virginia. Your Honor, what I guess I would suggest is that there's a plausible line in their cases, or there should be a plausible line, between the kind of thing that Vincent, for example, was talking about with misdemeanor assault, and then something that becomes assault inflicting a serious injury, or that we're talking about a robbery that's accomplished by nonviolent means and something that's aggravated. So all of these crimes, these very ordinary crimes like robbery and assault, they have a sort of lower level offense, and those things, our circuit has rightly said, are not crimes of violence. But then when you get into the aggravated categories, things become different altogether, because the legislature was seeking to differentiate the two. And the aggravated ones were the ones of violence, and that's who Congress is getting at with the force clause and the residual clause. They were getting at a cohort of especially violent offenders. And, you know, sentencing reform is all for the good, but if sentencing reform is targeting first offenders and nonviolent offenders, it's exactly the opposite of the people that this statute is focused upon. Well, that's one interpretation of it, and that's the problem with West Virginia. We don't have enough of a case law to get either one of us. I mean, we can conclude from your value set and your discussion, you're right. I'm arguing that there's enough ambiguity in this to suggest enough overbreath that for this one man, it's going to affect. It's not going to have some long-term reach for future defendants coming into federal court from West Virginia, because the statute's been changed. Well, let me ask you this. If it turns out that there was a mistake committed with respect to the offense, what's the impact here given Judge Johnston's explanation for the sentence? I think the impact is we go back and have a resentencing, and we do it under the new guideline. I mean, I suppose the counter to that is that it seems clear from the record that Judge Johnston was bound and determined to impose the sentence that he imposed, whether or not there was an enhancement or not. If we had submitted something to the court noting the difference in the time served sentence of 40 percent, deriving from the guideline we said should have applied, and from the 40 percent from the 30 to 37 that applied, and I'm only rushing because my time is going, I would invite the court's attention to the exchange at page 63 of the joint appendix, and the part of the sentencing memoranda or nothing I wrote, but the aspects of this defendant, that I think touch Judge Johnston the strongest. My client had attempted suicide multiple times in one year and said he gave up because he didn't think God wanted him to die. And Judge Johnston addressed that sentiment directly in addition to a lot of problems with the facts of the case, the evidence in the case, expressing a reason why it was fine for the United States to bring it. But I do not believe there is a basis to fairly conclude that if we went back, he would impose the same sentence. And if the guidelines were lower, I really do believe he would have imposed a time-served sentence like I asked for in my original sentence. Your client has already served his time, correct? He has not gotten to serve it. His parole was revoked by the state of West Virginia, and they're not going to give him a parole hearing until sometime at the end of 2018. He has not served a day of his federal sentence other than his pretrial detention. He was on parole from the earlier 1997 convictions, and as soon as he was convicted in federal court, they revoked him, and the earliest date they had given him is October of 2018. So he hadn't even started. So, Your Honors, and Judge Wilkerson, I certainly understand your viewpoint, but this whole categorical thing has started. It's a very nuanced thing. Sometimes you look at it, it's certainly a counterintuitive thing. But if we're applying the rule... It's a thing that binds us. Yes, ma'am. We've got to work within that. I'm glad to hear somebody other than me say that. Right, but at the same time, we do work in it. I'm a defender. I've got this duty to particularly this client. And in his case, particularly with this statute... I guess the point is the categorical approach is there. The Supreme Court has not overturned it. We're obliged to follow it. There's no question about that. But what I'm saying is there's a weakness to the categorical approach that everybody recognizes, even the proponents of it. And the weakness suggests that it not be stretched too far. And the weakness of it is that we have made a virtue out of blinding ourselves to primary facts and sentencing, which historically has been a hallmark of it. It has been historically, under statute, an attempt to find out individual facts about the individual being sentenced. And the categorical approach has things to recommend it. There's no question about it. And whether it does or it doesn't, it's the law and we follow it. But all I'm suggesting is that given the admitted weakness in not being able to inquire into actual primary conduct, which normally is the sentencer's function, this argues against pushing the categorical approach too far. That's all I'm saying. It's frustrating for you. It's frustrating for me. Sentencing is difficult by nature. Sure, it's frustrating for our bosses in Washington. But that's why I think we're getting these cautionary notes from the Supreme Court, which might help to save the categorical approach if people are in a highly theoretical pursuit of an outlier case. And I would submit in this case we're not going to exceed that threshold or create that circumstance. Thank you. I'm sorry, my time is up. Thank you very much. Yes, sir. Thank you. Mr. Bogus. Thank you, Your Honor. May it please the court. My name is Tim Bogus. I'm Assistant U.S. Attorney for the Southern District of West Virginia. And I, too, believe it would be shocking to find that aggravated robbery was not a crime of violence. I'm shocked that you think that. I say that and going on with something else that Judge Wilkinson said is we've got to also apply some common sense. When I was talking to my wife this weekend before I came up here to tell her what I was arguing before the Fourth Circuit, I was explaining to her how we were trying to have the court decide whether or not aggravated robbery is a crime of violence. And I could not for the life of me explain to her how it could not be a crime of violence. And her being a non-lawyer couldn't understand how anybody could look at aggravated robbery as being a crime of violence. In looking at the law, it is clear, as the court has also previously noted, that it fits very squarely within the elements clause of the definition of 4B1.2. And it does have the elements of the use, attempted use, or physical use, or attempted use of physical or threatened use of force. And the force that West Virginia requires is the type of force described in Johnson 1, or Johnson 2010, that is the type of force that is capable of causing physical pain or injury. Under the West Virginia aggravated robbery statute, the most innocent conduct penalized still encompasses violent force. As the courts noted, it involves striking or beating, suffocation, strangulation, or the use or presentment of firearms, or dangerous weapons, or instrumentality. I would note that the court, I think, is actually dead on when it talks about instrumentality, and it must be viewed in the context of the statute. In that context, it's pretty clear that the legislature is intending that if someone comes, that typically a crowbar is not a dangerous weapon. But in the context of an aggravated robbery, a crowbar very likely becomes a dangerous weapon from the standpoint of the victim who sees that crowbar being threatened against them. A baseball bat is not typically a dangerous weapon. But in that context, if somebody has a bat or a club, it certainly would be. I don't want to ramble on too much, but there are a couple things that I would like to note specifically about this statute, and that is that specifically what is noticeably absent from defendant's briefs or his argument are cases saying that the minimus contact in West Virginia is sufficient to establish robbery or aggravated robbery. He acknowledged that. He did today, so there are none. Also, I would note that in the context of in his brief, he talks about battery being sufficient because it says striking or beating, and that is battery. There is different elements of battery, and the statute does not say that it can be committed by committing battery on a person. It actually says striking or beating or suffocation or partial strangulation. Battery can be committed in West Virginia by harmful or offensive touching. So the statute does not say battery, but it says striking or beating, which is in fact violence to the person. Saying all that, aggravated robbery can only be committed through violent acts or the threat of violent force. This court has decided the case of U.S. v. McNeil where they also talk about taking by force and violence entails the use of physical force, and taking by intimidation involves the threat or use of such force. So even at the common law definition of robbery, it still meets the definition of the elements clause as the... Well, we don't need to get into that. We're dealing with aggravated robbery. Right. In any event, aggravated robbery certainly meets that definition. So unless the court has any further questions of me, I would just submit or request that the court find that aggravated robbery is a crime of violence and affirm the court's decision below. Thank you. Diane, do you have any questions? No, I don't. Thank you. We thank you. You have some rebuttal time, Mr. Coleman. Yes, sir. I'll try and be brief. Going to my colleague's story about discussing this with his wife, the reaction to a label is not surprising at all. It's aggravated robbery. Everybody assumes that's a certain thing. The problem is we've got 50 states with probably 50 different definitions of what aggravated robbery may be. Some may be beating the living... I hear your point. But on the other hand, these labels are applied to crimes for a reason. They're not determinative by any means. The heading in a statute book is not determinative of the statute. That's basic. But on the other hand, these labels are not meaningless, are they? Aggravated robbery is applied to differentiate it from less aggravated species of the crime. Right. Robbery where I take the article and run off versus robbery where I pick it up and push the person out of the way. What are the elements of a striking charge? Mr. Boggess just talked about batteries not in here. That's true. It's striking. What are the elements of striking? Does it draw blood? Does someone pass out? Does a bone break? It doesn't say. More importantly, neither the legislature nor the cases in West Virginia say. And you know what? Sir? It's a question of what the force clause says. You've probably repeated it. All of us in this room have probably read it so many times that we could recite it in our sleep. Yes, sir. But it says attempted use or threatened use of physical force against a person, against the person of another. And so I wonder if we're not sort of going down a distracting trail when we talk about the elements of striking. I don't think we are because it's got to be violent force under Johnson 2010, and that's defined a certain way. Striking, there's a difference between the word striking and the word touching. Touching doesn't imply violent force. But when you strike somebody, that's not something you want to happen. It's different. It's in contradistinction to touching. Inferring a certain definition of striking that neither legislature or courts. And then it's used in context repeated. Well, that more so. But that's we have alternatives in the statute is the point. And it's these extra side alternatives that are making it overly broad with a force clause. They don't all fall conveniently under the umbrella of Johnson 2010. And that's what takes the West Virginia statute out of it. If you just ask the common person using the words aggravated robbery, of course they're going to struggle with it. But we're dealing with law. We're dealing with the categorical approach. We're dealing with what a certain sovereign's legislature and courts have said and what they have not said and what a commission has said. You see, this is what's unfortunate about Beckles. We had a double indeterminacy when Johnson applied to the guidelines. Now with the advisory nature of the guidelines and additional undefined terms, we've got a triple and quadruple indeterminacy. Just as you ask what happens next if we go back and they're wrong about the force clause, we litigate what's left after that either with the generic offense compared to West Virginia or if the commission does something in the meantime and we have this continuing ambiguity come back in. But I'm sorry, Your Honors. It's just the words don't make it positive of the force clause. Yes, ma'am. I have a question. All right. Thank you. My time is up. We thank you, sir. Thank you, sir. We will adjourn court and we will come down and greet counsel.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Albert Diaz